## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| **CHRISTOPHER SMONDROWSKI,**<br>*Plaintiff,*<br><br>v.<br><br>**THE EDGEWOOD COMPANY, INC.,**<br>*Defendant.* | **Civil No. 24-1297** |

## <u>MEMORANDUM</u>

**Costello, J.**                                                    **December 18, 2025**

Plaintiff Christopher Smondrowski is a former employee of Defendant The Edgewood Company, Inc.  Plaintiff alleges that Defendant terminated him after he sought disability accommodations and workers' compensation benefits for a workplace injury.  He has alleged claims for discrimination, retaliation, and failure to accommodate under the Americans with Disabilities Act ("ADA"), the Pennsylvania Human Relations Act ("PHRA"), and Pennsylvania common law.  Plaintiff further alleges a claim for age discrimination under the Age Discrimination in Employment Act ("ADEA"), contending that Defendant replaced him with a significantly younger employee.  Defendant has moved for summary judgment on all claims.  As described below, the Court will grant Defendant's motion as to the ADEA claim and deny the motion as to the remaining claims.

## I.    FACTUAL BACKGROUND

This case involves three categories of claims: (1) those related to the disability that Plaintiff allegedly sustained because of his workplace injury; (2) those related to his alleged replacement by a younger employee; and (3) those related to his pursuit of workers' compensation benefits for his injury.

### A.    Workplace Injury and Subsequent Disability

Defendant is a commercial landscaping company.  *See* ECF No. 35-1 at 2 ¶¶ 1-2.

Plaintiff was hired as a fleet manager in early 2020.  *Id.* at 2-3 ¶¶ 5-6.  Plaintiff's job primarily

involved maintenance and repair of company vehicles and equipment.  *Id.* at 3 ¶ 6.  In August of

2023, Plaintiff sustained an arm injury because of a workplace accident.  *See* ECF No. 35-5 at

14:5-11.  The injury required Plaintiff to wear a full cast from his hand to the middle of his arm

for between twelve and sixteen weeks, which made it difficult to complete tasks that required

both hands.  *Id.* at 30:4-21.  The injury left Plaintiff with ongoing pain and weakness that limited

his ability to perform certain physical activities such as lifting, pulling, and bending his arm.

ECF No. 10 ¶¶ 22, 39, 42.

Plaintiff contends that he requested accommodations from Defendant throughout August,

September, and October of 2023.  Namely, he sought assistance with manual tasks that required

two hands, "light duty" assignments, and "occasional time out to care for his disabilities."  *See*

ECF No. 35-5 at 30:4-21 (Plaintiff testifying that he asked everyone who was near him at work

for assistance with manual tasks while he was in a cast); ECF No. 35-2 at 23-24 (describing

Plaintiff's purported request for accommodations).  Plaintiff alleges that Defendant failed to

provide him with these accommodations and that he was ultimately terminated on January 10,

2024 because of his disability and request for accommodations.  ECF No. 10 ¶¶ 44-45.

### B.    Replacement By a Younger Employee

Plaintiff alleges that, sometime prior to his termination, Defendant hired a significantly

younger employee to replace him—Andy Lucero-Quijada (hereinafter "Lucero," consistent with

how the parties refer to him in their filings), who was 21 at the time of his hiring.  ECF No. 35-1

¶¶ 16, 26.  Defendant's management allegedly touted Lucero as the "future of the company"—

which Plaintiff argues was a "clear indication they were planning on replacing Plaintiff . . . because of his age[.]"  ECF No. 10 ¶¶ 28-30.  Lucero took on the title of "Fleet Manager," but the parties dispute whether Lucero actually "replaced" Plaintiff in terms of assuming Plaintiff's former job responsibilities.  *See* ECF No. 32 ¶¶ 16, 20; ECF No. 35-1 at 8 ¶¶ 17-21.

### C.    Request for Workers' Compensation

Plaintiff contends that he asked Defendant's management for information on how to file a workers' compensation claim after he sustained his arm injury, but Defendant "actively dissuaded Plaintiff" from pursuing a claim, promising that Defendant would "take care of his medical expenses[.]"  ECF No. 10 ¶¶ 23-24.  Plaintiff alleges that his termination was retaliation for pursuing workers' compensation.

## II.    LEGAL STANDARD

Summary judgment is appropriate if the movant shows "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "To defeat a motion for summary judgment, there must be a factual dispute that is both material and genuine."  *Bennett v. SEPTA*, 23cv1271, 2024 WL 404959, at *6 (E.D. Pa. Feb. 2, 2024), *aff'd sub nom.*, *Bennett v. Se. Pa. Transp. Auth.*, 24cv1376, 2025 WL 1248815 (3d Cir. Apr. 30, 2025).  A fact is material if it "might affect the outcome of the suit under the governing law[.]"  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute over a material fact is "genuine" if, "based on the evidence, 'a reasonable jury could return a verdict for the nonmoving party.'"  *Bennett*, 2024 WL 404959, at *6 (quoting *Anderson*, 477 U.S. at 248).

The movant bears the initial burden of demonstrating the absence of a genuine dispute of material fact.  *Goldenstein v. Repossessors Inc.*, 815 F.3d 142, 146 (3d Cir. 2016).  "When the movant is the defendant, they have the burden of demonstrating that the plaintiff 'has failed to

establish one or more essential elements of her case.'" *Bennett*, 2024 WL 404959, at *6 (quoting *Burton v. Teleflex Inc.*, 707 F.3d 417, 425 (3d Cir. 2013)). "In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). "If Plaintiff fails to raise a genuine dispute of material fact as to any element of his prima facie case, summary judgment in favor of Defendant is warranted." *Hanafy v. Hill Int'l, Inc.*, 669 F. Supp. 3d 419, 433 (E.D. Pa. 2023) (citing *Geraci v. Moody-Tottrup, Int'l, Inc.*, 82 F.3d 578, 580 (3d Cir. 1996)).

The Court does not weigh evidence or make credibility determinations at the summary judgment stage. Rather, it simply determines "whether there is a genuine issue for trial." *Bennett*, 2024 WL 404959, at *6 (citing *Anderson*, 477 U.S. at 249). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient" to create a triable issue; "there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

## III.    DISCUSSION

Defendant argues that Plaintiff's failure-to-accommodate claim fails because Plaintiff has not proffered any evidence that he ever made a formal request for an accommodation. ECF No. 31 at 12-13. Plaintiff responds that no formalized request for an accommodation is required, and that he put Defendant on notice of his medical needs sufficient to trigger Defendant's obligation to engage in a good-faith effort to discuss whether reasonable accommodations could be provided. *See* ECF No. 35-2 at 16-18.

Defendant further argues that Plaintiff's disability discrimination and retaliation claims fail because the undisputed record shows that Plaintiff's position was "eliminated in a cost-

saving restructuring, and not because of any disability." ECF No. 31 at 9.  Defendant similarly argues that Plaintiff's age discrimination and retaliation claims fail because the restructuring was the reason for his termination and because Lucero was not hired to replace Plaintiff.  *See id.* at 13-16.  Plaintiff argues that the alleged restructuring is mere pretext as no downsizing or corporate reorganization occurred.  ECF No. 35-2 at 32-38.

Defendant argues that Plaintiff's wrongful discharge claim fails because he never expressed an intent to seek workers' compensation benefits, so Defendant could not have discharged him for this reason.  *See* ECF No. 31 at 16-18.  Plaintiff counters that he did express an intent to seek benefits when he asked his supervisors for more information about the process but was dissuaded from pursuing a claim.  ECF No. 35-2 at 40-42.

### A.    Disability Discrimination & Retaliation Claims

#### i.    Discrimination (ADA and PHRA)

***Elements of Claim & Burden-Shifting Framework.***  To establish a prima facie case of disability discrimination under the ADA and PHRA, a plaintiff must show that: "'(1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of the discrimination.'" *Garcia v. Vertical Screen*, 592 F. Supp. 3d 409, 419 (E.D. Pa. 2022) (citing *Gaul v. Lucent Tech.*, 134 F.3d 567, 580 (3d Cir. 1998)).[1]

---

[1] The Third Circuit interprets PHRA discrimination claims under the same standard as ADA claims.  *Larochelle v. Wilmac Corp.*, 769 Fed. App'x 57, 65 (3d Cir. 2019) (ADA and PHRA claims contain same elements and are evaluated using same standard); *accord Ahern v. Eresearch Tech., Inc.*, 183 F. Supp. 3d 663, 668 (E.D. Pa. 2016).

If a plaintiff makes a prima facie showing of discrimination, then the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). If the defendant articulates such a reason, then the plaintiff must "establish by a preponderance of the evidence that the employer's proffered reasons were merely a pretext for discrimination, and not the real motivation for the unfavorable job action." *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003). The Plaintiff can make this showing by pointing to "'weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them unworthy of credence.'" *Cagnetti v. Juniper Vill. at Bensalem Operations*, 18cv5121, 2020 WL 4039027, at *6 (E.D. Pa. July 17, 2020) (quoting *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994)) (further quotations and citations omitted). "In other words, a plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that the invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Id.* (internal quotations omitted). Here, the parties disagree whether Plaintiff had a disability and whether Plaintiff's disability was the but-for cause of his termination.[2]

**Disability.** The ADA defines "disability" to include "a physical or mental impairment that substantially limits one or more major life activities[.]" 42 U.S.C. § 12102(1)(A). "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing,

---

[2] Defendant does not dispute that Plaintiff was qualified for his job and that Plaintiff suffered an adverse employment action. *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998) (termination is an adverse employment decision).

hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." *Id.* § 12102(2)(A). The statute also provides that "[t]he definition of disability in this chapter shall be construed in favor of broad coverage of individuals under this chapter, to the maximum extent permitted by the terms of" the statute. *Id.* § 12102(4)(A). "Whether an individual is substantially limited in the performance of a major life activity is a question for a jury unless there is no evidence on the record from which a reasonable jury could conclude the plaintiff was substantially limited." *Garcia*, 592 F. Supp. 3d at 419.

There is sufficient evidence in the record from which a jury could find that Plaintiff was disabled. Plaintiff's interrogatory responses state that he suffered a serious arm injury, "which continues to cause pain, a tingling sensation in his entire extremity, weakness in his left arm, and nerve pain," and which at times "limits his ability to perform some daily life activities, including . . . moving, lifting, pulling, and bending his arm[.]" ECF No. 35-11 at 10. The independent medical examiner hired by Defendant concluded that Plaintiff's fracture had not yet healed, that he "lost terminal rotation of his forearm," and required physical therapy for a year. ECF No. 35-12 at 5. The examiner also concluded that Plaintiff could return to work but only "in a modified duty position." *Id.* Plaintiff's ongoing pain, difficulties moving, extending, and rotating his arm, and need for ongoing physical therapy together provide a sufficient evidentiary basis for Plaintiff's position—particularly in light of the "broad" definition of disability under the ADA. *See* 42 U.S.C. § 12102(4)(A). Accordingly, a reasonable jury could find that Plaintiff was disabled. *See Anderson*, 477 U.S. at 252; *see also Garcia*, 592 F. Supp. 3d at 419 (crediting plaintiff's testimony that his medical condition sometimes limited work and life activities in finding that "a reasonable jury could conclude he was disabled").

*Causal Connection.*  Courts consider a variety of evidence in evaluating whether a plaintiff has established causation in disability discrimination cases, including "(1) temporal proximity between a protected activity and the adverse employment action, (2) whether there is a pattern of antagonism following protected conduct, and (3) whether the record, taken as a whole, raises an inference of causation."  *Garcia*, 592 F. Supp. 3d at 420 (internal quotations omitted). Here, Plaintiff points to two types of evidence in the record that he argues establish causation.

First, Plaintiff relies on the temporal proximity between his injury, requests for accommodations, and termination.  *See* ECF No. 35-2 at 28-29.  Plaintiff sustained his injuries in August of 2022.  *See* ECF No. 35-5 at 14:5-11.  He kept asking for help with physical tasks from his coworkers and supervisors throughout August, September, October, and November of 2022. *Id.* at 29:17-30:15, 41:3-22.  And Plaintiff was ultimately terminated in early January 2023.  *Id.* at 18:7-12.  *Id.*

This three-to-five-month period is insufficient on its own to establish causation.  While the Third Circuit has held that "unduly suggestive temporal proximity may give rise to an inference of causation, [it has] never held that a temporal gap of one month alone sufficiently demonstrates a causal connection."  *Tirk v. Dubrook, Inc.*, 673 Fed. App'x 238, 241 (3d Cir. 2016) (internal quotations omitted).  Indeed, the Third Circuit has typically declined to infer causation where the temporal gap between the protected activity and adverse employment action has been longer than a few weeks.  *Compare Jones v. Serv. Elec. Cable TV, Inc*., 809 F. App'x 105, 111 (3d Cir. 2020) (where there is a "multi-month gap . . . temporal proximity is not so close as to be unduly suggestive"); *Williams v. Phila. Hous. Auth. Police Dep't*, 380 F.3d 751, 760 (3d Cir. 2004) (two-month gap insufficient to establish prima facie causation); *with Lichenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 307 (3d Cir. 2012) (seven-day gap

8

sufficient to establish prima facie causation in retaliation case); *Jalil v. Avdel Corp.*, 873 F.2d 701, 708 (3d Cir. 1989) (two-day gap unduly suggestive enough to infer causation).

In light of this precedent, the three-to-five-month time period between Plaintiff's injury, request for accommodations, and termination is not enough to establish causation on its own. *See Tirk*, 673 Fed. App'x at 241.  However, temporal proximity "plus other evidence may be an appropriate test." *Jones*, 809 F. App'x at 111 (internal quotations omitted).  Thus, the timing can still be considered in connection with other evidence of causation to establish Plaintiff's prima facie case.

Second, Plaintiff relies on Defendant's inconsistent explanations for his firing as evidence of causation.  Evidence of inconsistent explanations for an adverse employment decision is often considered *after* the prima face case is established and the burden switches to the employer to articulate a nondiscriminatory reason for the adverse employment action.  *See McDonnell Douglas*, 411 U.S. at 802.  The plaintiff can then point to inconsistent testimony about the reasons for the action as evidence the proffered justification is pretext.  *See, e.g. Cullen v. Select Med. Corp.*, 779 Fed. App'x 929, 931-32 (3d Cir. 2019) (reversing summary judgment grant because plaintiff pointed to evidence of inconsistent explanations sufficient to create factual issue on whether nondiscriminatory reason was pretextual); *Woods v. AstraZeneca Pharms., L.P.*, 659 F. Supp. 3d 512, 528 (W.D. Pa. 2023) (evaluating inconsistent testimony about proffered reasons for plaintiff's termination in step three of burden-switching framework).

But many courts in this Circuit also consider inconsistent explanations for adverse employment actions as evidence of causation in support of a plaintiff's prima facie case.  *See, e.g., Waddell v. Small Tube Prods.*, 799 F.2d 69, 73 (3d Cir. 1986) (noting that district court could have credited "inconsistent explanations for its refusal to rehire [plaintiff]" in prima facie

9

causation analysis); *Sryfi v. Trs. of Univ. of Penn.*, 24cv567, 2025 WL 590337 (E.D. Pa. Feb. 24, 2025) ("An adverse employment action may be causally linked to an employee's protected activity by a broad array of evidence, such as inconsistent explanations for the action") (citing *Carvalho-Grevious v. Del. State Univ.*, 851 F.3d 249, 260 (3d Cir. 2017))); *Powell v. Boscov's Dept. Store, LLC*, 2024 WL 666485, at *13-15 (M.D. Pa. Feb. 16, 2024) (considering inconsistent explanations for adverse employment actions in determining whether plaintiff stated prima facie case of ADA discrimination).

Here, there is evidence in the record of at least three different and inconsistent explanations Defendant has given to justify Plaintiff's termination. First, one of Plaintiff's supervisors, Timothy Fry, texted Plaintiff and informed him he was being laid off because his position was "no longer available" at the company. *See* ECF No. 35-14 at 2. Second, Defendant's interrogatory responses state that the decision to terminate Plaintiff was "solely due to his inability to follow directions of management, poor work performance, and numerous instances of negative, demeaning attitude to coworkers, clients, and management." *See* ECF No. 35-15 at 2. In the same interrogatory responses, Defendant also states that Plaintiff was terminated due to "issues with leaving early and coming in late, on his own accord." *Id.* at 3. These inconsistent explanations are sufficient to create a genuine and material dispute of fact as to causation. *See Powell*, 2024 WL 666485, at *13-15 (reasonable jury could find that varying explanations are probative of causation).

**Pretext.** Since a reasonable jury could find that Plaintiff established a prima facie case of disability discrimination under the ADA and PHRA, the burden shifts to Defendant to articulate a legitimate, nondiscriminatory reason for Plaintiff's termination. *See McDonnell Douglas*, 411 U.S. at 802. Defendant argues that "Plaintiff's position was eliminated as part of a broader

restructuring strategy targeting costs and streamlining coverage." ECF No. 31 at 14; ECF No. 32 ¶¶ 10-12. There is no evidence in the record that Defendant ever undertook such a restructuring. When asked at oral argument whether any such evidence exists, Defendant pointed to a text message from one of Plaintiff's supervisors, Timothy Fry, stating that Plaintiff was being laid off because his position was "no longer available" at the company. *See* ECF No. 35-14 at 2; ECF No. 46 at 5:13-6:17. This text message does not show that Defendant implemented any restructuring or cost-saving measures other than eliminating Plaintiff's job. Absent any record evidence supporting Defendant's proffered reason for Plaintiff's termination, Defendant has failed to meet its admittedly "light" burden to articulate a legitimate, nondiscriminatory explanation. *See Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 189 (3d Cir. 2003) (internal quotations omitted) (describing defendant's burden at this step of the *McDonnell Douglas* burden-shifting framework as "relatively light").

Even if Defendant could support its proffered reason with some record evidence, summary judgment would still not be appropriate because Plaintiff points to several pieces of evidence sufficient for a reasonable factfinder to disbelieve Defendant's articulated legitimate explanation for his firing. *See Fuentes*, 32 F.3d at 765. Most persuasively, as described above, *supra* at 10, Plaintiff points to at least three inconsistent explanations for why Defendant terminated him: first, because the position was no longer available due to a restructuring, *see* ECF No. 35-14 at 2, second, because Plaintiff purportedly failed to follow directions of management and had poor work performance, *see* ECF No. 35-15 at 2, and third, because Plaintiff allegedly had issues with leaving work early and coming in late without permission, *see* ECF No. 35-15 at 2.

11

The Third Circuit has held that inconsistent explanations for a hiring decision can satisfy a plaintiff's evidentiary standard to show pretext. *See Cullen*, 779 Fed. App'x at 932 (reversing grant of summary judgment where plaintiff offered evidence of inconsistent explanations for termination, because these explanations constituted evidence "that would support the trier of fact's disbelief" of the employer's nondiscriminatory explanation) (internal quotations omitted); *see also Reeves v. Sanderson Pluming Prods., Inc.*, 530 U.S. 133, 147 (2000) ("Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive."). Thus, Defendant's inconsistent explanations for Plaintiff's termination create a genuine dispute of material fact that is best resolved by a factfinder. *See Cullen*, 779 Fed. App'x at 932 (inconsistent explanations for adverse employment decisions cast doubt on plausibility of employer's motivation and create triable fact issue).

Plaintiff also puts forth evidence that Defendant failed to follow its internal corrective action policies. Defendant had a progressive discipline system and typically kept written records of each corrective action taken pursuant to that system. *See* ECF No. 35-8 at 13-14; *see also* ECF No. 35-9 at 9-10. Plaintiff testified that he was never issued any discipline for the purported attitude and performance problems cited by Defendant as one of its explanations for Plaintiff's termination. *See* ECF No. 35-5 at 12-17. This is further circumstantial evidence "from which a factfinder could reasonably . . . disbelieve the employer's articulated legitimate reasons" for terminating Plaintiff. *Cagnetti*, 2020 WL 4039027, at *6.

In sum, the record includes sufficient evidence of a genuine dispute of material fact as to Plaintiff's prima facie showing of discrimination and the legitimacy of Defendant's

nondiscriminatory explanation for his firing.  The Court will accordingly deny Defendant's
motion for summary judgment as to the ADA and PHRA discrimination claims.

      ii.      <u>Retaliation (ADA and PHRA)</u>

    ***Elements of Claim & Burden-Shifting Framework.***  To establish a prima facie case of
retaliation under the ADA (and PHRA), a plaintiff must show "(1) protected employee activity,
(2) adverse action by the employer either after or contemporaneous with the protected activity
and (3) a causal connection between the protected activity and the employer's adverse action."
*Matero v. Chipotle Mexican Grill, Inc.*, 17cv5529, 2018 WL 4510494, at *4 (E.D. Pa. Sept. 20,
2018) (citing *Shellenberger*, 318 F.3d at 187).  If the plaintiff identifies sufficient evidence to
make this showing, then the same burden-shifting framework applies.  The defendant must state
a legitimate reason for the termination and the burden flips back to the plaintiff to show that
reason is pretextual.  *See Campo v. Mid-Atl. Packaging Specialties, LLC*, 564 F. Supp. 3d 362,
394-95 (E.D. Pa. Sept. 29, 2021) (applying *McDonnell Douglas* burden-shifting framework to
ADA retaliation claim).  The parties dispute only the first and third elements of this claim.

    ***Protected Employee Activity.***  Requesting an accommodation is protected activity under
the ADA so long as a plaintiff makes the request in "good faith."  *See Shellenberger*, 318 F.3d at
191.  As discussed in detail below, *infra* at 16-17, there is sufficient evidence in the record that a
reasonable jury could find Plaintiff requested accommodations.  Nothing in the record suggests
Plaintiff's accommodations requests were made in bad faith and Defendant has not argued to the
contrary.  *See Shellenberger*, 318 F.3d at 191 (reversing grant of summary judgment where there
was nothing in the record suggesting that plaintiff's request for accommodations "was motivated
by anything other than good faith, and [Defendant] has not argued to the contrary").

*Causal Connection.* As with an ADA discrimination claim, "a plaintiff may rely on a 'broad array of evidence' to demonstrate the causal link between his protected activity and the adverse action taken against him.'" *Cagnetti*, 2020 WL 4039027, at *6 (quoting *Marra v. Phila. Housing Auth.*, 497 F.3d 268, 302 (3d Cir. 2007)) (further quotations omitted). For the same reasons articulated above with respect to Plaintiff's ADA discrimination claim, Plaintiff has identified sufficient evidence to create a genuine and material dispute of fact as to causation, including Defendant's numerous inconsistent explanations for Plaintiff's firing and failure to comply with its own discipline policy. *See supra* at 10.

*Pretext.* Again, Defendant fails to point to a single piece of record evidence supporting its nondiscriminatory justification for terminating Plaintiff other than the nondescript text message from Timothy Fry. *See supra* at 11. Even if it had, the same evidence Plaintiff relies on to establish pretext in his discrimination claim applies to his retaliation claim. As explained above, the inconsistent explanations proffered by Defendant, coupled with Defendant's purported failure to follow its own progressive discipline policy, are sufficient to create a dispute of fact as to pretext. *See supra* at 10, 12. This evidence casts doubt on Defendant's justification because it could demonstrate "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" related to that explanation that could cause a "reasonable factfinder" to discredit Defendant. *See Cagnetti*, 2020 WL 4039027, at *9.

The record includes sufficient evidence to create a genuine dispute of material fact as to each element of Plaintiff's retaliation claim. Accordingly, the Court will deny Defendant's motion for summary judgment on the ADA and PHRA retaliation claims.

14

### B.    Failure to Accommodate Claim

***Elements of Claim.***   To establish a prima facie claim that an employer failed to provide reasonable accommodations under the ADA, a plaintiff must show that (1) the employer knew about the plaintiff's disability; (2) the employee requested accommodations or assistance for his disability; (3) the employer failed to make a "good faith effort" to assist the employee in seeking accommodations; and (4) the employee could have been reasonably accommodated "but for the employer's lack of good faith." *Emmell v. Phoenixville Hosp. Co., LLC*, 303 F. Supp. 3d 314, 328-29 (E.D. Pa. 2018) (internal quotations omitted).   "Because failure to accommodate an employee's disability is itself evidence of discrimination under the ADA, there is no need in such a case for indirect proof of discrimination.   Thus, the *McDonnell Douglas* burden shifting framework does not apply."   *Campo*, 564 F. Supp. 3d at 388-89 (internal quotations, alterations, and citations omitted).

***Known Disability.***   "[E]ither by direct communication or other appropriate means, the employee must make clear that [he/she] wants assistance for his or her disability." *Colwell v. Rite Aid Corp.*, 602 F.3d 495, 506 (3d Cir. 2010) (internal quotations omitted).   "The employer must have enough information to know both of the disability and desire for an accommodation, or circumstances must at least be sufficient to cause a reasonable employer to make appropriate inquiries about the possible need for the accommodation." *Id.* (internal quotations omitted).

There is sufficient evidence in the record for a reasonable jury to conclude that Defendant knew of Plaintiff's disability. *See Anderson*, 477 U.S. at 248.   Two of Plaintiff's supervisors testified that they were aware Plaintiff injured himself at work.   ECF No. 35-8 at 25:23-26:4; ECF No. 35-9 at 18:7-13.   Plaintiff also wore a full cast from his hand to the middle of his arm for several weeks following a surgery for his injury.   ECF No. 35-5 at 23:22-24:4.   This cast

15

presented a visual indication of Plaintiff's physical limitations. Plaintiff also texted with one of his supervisors about having "a few doctor visits" related to his injury, another possible indication of Defendant's knowledge of Plaintiff's physical limitations. ECF No. 35-13 at 2. These facts are such that a reasonable jury could conclude that Defendant had "enough information to know . . . of the disability." *Colwell*, 602 F.3d at 506.

***Accommodations Requested.*** Defendant contends that Plaintiff did not request accommodations because he "produced no emails, letters, or text messages indicating a request for help." *See* ECF No. 31 at 11. However, the law "does not require any formal mechanism or 'magic words' to notify an employer that an employee needs an accommodation." *Colwell*, 602 F.3d at 506-07 (quoting *Conneen v. MBNA Am. Bank, N.A.*, 334 F.3d 318, 332 (3d Cir. 2000)). "[I]f it appears that the employee may need an accommodation but doesn't know how to ask for it, the employer should do what it can to help." *Id.*

In this case, a reasonable factfinder could conclude that Plaintiff sought accommodations. Plaintiff testified in his deposition that he asked "anyone who was near him" for assistance with certain manual tasks that required his left hand—which was in a cast for between twelve and sixteen weeks. *See* ECF No. 35-5 at 30:4-21 (testifying that "if you were near me, I would ask you to help me. I mean, I was asking for everybody."). This included asking management for help. *Id.*

Courts in the Third Circuit have found similar evidence sufficient to create a triable fact issue on this element of a failure to accommodate claim. For instance, in *Mills v. Temple University*, the plaintiff testified that she "had several conversations" with her supervisors in which "she requested help" from others to complete a manual task. 869 F. Supp. 2d 609, 623 (E.D. Pa. 2012). The defendant denied ever having those conversations. *Id.* A healthcare

16

provider also wrote a note to the defendant that the plaintiff was "having trouble" completing that manual task. *Id.* The court found this to be "sufficient evidence . . . for a reasonable juror to conclude" plaintiff requested an accommodation. *Id.*

Plaintiff here did not present evidence of a contemporaneous physician's note. In fact, he admitted that his doctors did not impose any work restrictions after his surgeries for his arm injury. *See* ECF No. 35-5 at 42:17-20. Nevertheless, like the plaintiff in *Mills*, Plaintiff here made repeated requests for help with completing manual tasks that he could not complete on his own due to an injury. This is sufficient for a reasonable jury to find that Plaintiff requested accommodations, particularly since no formal written requests or "magic words" are required. *See Colwell*, 602 F.3d at 506-07; *see also Westmoreland Cnty.*, 20cv790, 2022 WL 17905267, at *10 (W.D. Pa. Nov. 17, 2022), *report and recommendation adopted,* 20cv790, 2022 WL 17904252 (W.D. Pa. Dec. 23, 2022) (triable issue where plaintiff's supervisor was notified of plaintiff's disability and symptoms and plaintiff conveyed that she needed more time to complete certain tasks); *compare to Geronimo v. Pottsville Ford*, 20cv02145, 2021 WL 4189629, at *6 (M.D. Pa. Sept. 14, 2021) (plaintiff's general request for help when she started a new job, without any indication that her request related to a disability or injury, was not sufficient to establish she requested accommodations).

**_Good-Faith Effort to Assist the Employee._** "Once the employer knows of the disability and the employee's desire for accommodations, the burden shifts to the employer to engage in the accommodation process." *See Campo*, 564 F. Supp. 3d at 389 (internal quotations omitted). This entails the defendant initiating "an informal, interactive process" with the plaintiff to "identify the precise limitations resulting from the disability and the potential reasonable

accommodations that could overcome those limitations." *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 315 (3d Cir. 1999).

Defendant contends that because Plaintiff did not formally request any accommodation, its obligation to engage in a good-faith effort to discuss whether reasonable accommodations could be provided was never triggered. *See* ECF No. 31 at 10-13. As a result, Defendant admittedly never engaged in an interactive process to assist the Plaintiff in seeking accommodations. ECF No. 46 at 14:17-21. Indeed, there is no record evidence that Defendant interacted with Plaintiff at all to determine the scope of his physical limitations or whether accommodations were necessary or available. *See Campo*, 564 F. Supp. 3d at 389 ("At bottom, 'the interactive process, as its name implies, requires the employer to take some initiative.'") (quoting *Taylor*, 184 F.3d at 315) (alterations omitted).

***Availability of Reasonable Accommodations.*** A reasonable jury could find that reasonable accommodations were available to Plaintiff. Plaintiff argues that his arm injuries did not preclude him from doing his job entirely, but that he occasionally needed assistance with certain manual tasks that required two hands, ECF No. 35-5 at 29:17-30:11, "light-duty accommodations," and "occasional time out to care for his disabilities," ECF No. 35-2 at 23-24; *see also* ECF No. 35-11 at 10. Plaintiff does not explain what he means by "light duty" or "occasional time out to care for his disabilities." ECF No. 35-2 at 23-24. But at minimum, it seems Defendant could have reasonably accommodated Plaintiff by having another employee assist with the manual tasks that required two hands during the twelve-to-sixteen-week period Plaintiff's arm was in a cast. Indeed, Plaintiff testified that on at least one occasion a coworker helped him with some of those tasks. *See* ECF No. 35-5 at 30:8-21. This is enough evidence to create a triable issue on this element of Plaintiff's claim.

18

Plaintiff has presented sufficient evidence to create a genuine dispute of material fact regarding each element of his ADA failure to accommodate claim. The Court will deny Defendant's motion for summary judgment on this claim.

### C.    Age Discrimination Claim

***Elements of Claim & Burden-Shifting Framework.***  To establish a prima facie case of retaliation under the ADEA, a plaintiff must show that (1) he is forty years of age or older; (2) the defendant took an adverse employment action against him; (3) he was qualified for the position in question; and (4) he was replaced by another employee who was significantly younger. *Burton*, 707 F.3d at 426.  The fourth element requires the plaintiff to present evidence that raises an "inference of age discrimination." *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 645 (3d Cir. 2015).  If the plaintiff makes this showing, then the burden shifts to the defendant to offer a legitimate nondiscriminatory reason for the adverse employment action. *Id.* at 645; *see also Burton*, 707 F.3d at 426 (applying *McDonnell Douglas* burden-shifting framework to ADEA claim).  Here, only the fourth element of Plaintiff's claim is in dispute. *See* ECF No. 31 at 13 (Defendant conceding that "Plaintiff satisfies the first three elements").

***Replacement by Another Employee.***  Plaintiff is correct that when a "significantly younger" employee replaces a Plaintiff, "replacement alone" can support an inference of discriminatory animus. *See Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 649 (3d Cir. 1998) (Pollak, J. concurring).  But here, it is not clear as a factual matter that Plaintiff was actually *replaced* with another employee.

Plaintiff contends that he was replaced with a 21-year-old employee named Andy Lucero. *See* ECF No. 35-1 ¶ 17(a).  It is unclear exactly when Lucero was hired. *See* ECF No. 31 at 14 (stating that Lucero was hired on January 2, 2024, "weeks before Plaintiff's separation on

January 23, 2024"); ECF No. 32 ¶ 17 ("Lucero was hired in November 2022"); ECF No. 35-1 ¶ 17(a) ("The exact date of Lucero's hiring is unclear (as Defendant . . . claims it has no records to reflect the date he was hired")).  Defendant argues that, although "Plaintiff's responsibilities were later absorbed by [Lucero]," *see* ECF No. 32 ¶ 16, he was not initially hired to replace Plaintiff.  Rather, he was recruited to "expand [Defendant's] reach into a distinct New Jersey territory—one Plaintiff never serviced and was not positioned to take on," ECF No. 31 at 14, and his initial role was "limited to hands-on repair tasks," ECF No. 32 ¶ 20.

The parties agree that Lucero was hired while Plaintiff was still employed.  *See* ECF No. 35-1 ¶ 18(a).  The parties also agree that Lucero took the title of "fleet manager" sometime after Plaintiff's termination, which was the title that Plaintiff previously held.  *See* ECF No. 31-4 at 11:13-12:3 (Lucero testifying that he was "referred to as fleet manager" after Plaintiff left).  But it is not clear from the record whether Lucero took over the same job responsibilities as Plaintiff such that he can be considered a direct replacement.  *See id.* at 12:4-10 (Lucero testifying that he's "not really sure if" he "filled [Plaintiff's] shoes completely" or if he did more or less than Plaintiff did in that role).  Thus, the Court finds that, at best, this is a case of *indirect replacement*—i.e., Lucero eventually took over the same job title as Plaintiff but was not immediately operating as a direct replacement with the same responsibilities.  *See Galette v. Avenue 365 Lending Servs., LLC*, 22cv2778, 2024 WL 247044, at *12-13 (E.D. Pa. Jan. 23, 2024), *aff'd*, 24-1221, 2025 WL 429973 (3d Cir. Feb. 7, 2025) (plaintiff failed to establish direct replacement where three other substantially younger employees who were hired prior to plaintiff's termination were retained after plaintiff's termination and no other younger workers were subsequently hired to take over plaintiff's job responsibilities).

20

*Inference of Discriminatory Animus.* In cases in which the plaintiff is not directly replaced, the fourth element is satisfied if the plaintiff can show that the adverse action was "more likely than not based on the consideration of impermissible factors." *Willis*, 808 F.3d at 644 (internal quotations omitted). "At bottom, though, [Plaintiff] must prove that age was the but-for cause of the employer's adverse decision." *Reed v. V.I. Water & Power Auth.*, 779 F. App'x 880, 885 (3d Cir. 2019) (internal quotations omitted).

Plaintiff points to three pieces of evidence that he contends establish age was the but-for cause of his termination. First, an errant statement by one of his supervisors that Lucero was the "future of the company." *See* ECF No. 35-2 at 7 (arguing this was a "clear indication that [Defendant] was planning on replacing [Plaintiff] in the near future because of his age and disability status"). This statement fails to raise an inference of discrimination. The remark makes no reference to age. Calling a younger employee the "future of the company" could be a reference to *any* of that employee's attributes—e.g., his work ethic or vision for the company. Plaintiff is merely speculating that this remark is about Lucero's age. *See Gardner v. Ulta Salon Cosmetics and Fragrance, Inc.*, 2024 WL 1110384, at *2 (3d Cir. Mar. 14, 2024) (plaintiff failed to raise inference of discrimination where only evidence was her own "conjecture and speculation").

Plaintiff fails to point to any other statements or context that would suggest the remark was related to age. For instance, Plaintiff cannot point to any other remarks made by his supervisors "that would suggest an age bias in general, or specifically with respect to" Plaintiff. *See Willis*, 808 F.3d at 646; *see also* ECF No. 46 at 25:15-26:23 (Plaintiff at summary judgment argument failing to identify any other specific comments related to age). Accordingly, Plaintiff's position that this errant comment is necessarily a reference to age is rooted in nothing other than

his "own belief that this was the reason for [his] termination[.]" *See Willis*, 808 F.3d at 646 (plaintiff did not establish fourth element of prima facie case of ADEA age discrimination claim where only evidence supporting inference of discrimination was "[a] passing reference to [Plaintiff's age] and [Plaintiff's] own belief that age discrimination occurred"); *see also Reed*, 779 Fed. App'x at 883-85 (affirming district court grant of summary judgment based on conclusion that a "lone comment" that plaintiff is "getting old" failed to raise inference of discrimination sufficient to state prima facie case under ADEA).

Second, Plaintiff proffers evidence that the median age of Defendant's workforce is 34 years old, which is 7.6 years younger than the median age of the labor force as a whole. ECF No. 35-2 at 8. These general statistics "do not comprise sufficient evidence that *similarly situated*, substantially younger employees were more favorably treated[.]" *Willis*, 808 F.3d at 646 (emphasis added). Thus, they have no bearing on whether age discrimination was the but-for cause of Plaintiff's termination.

Third, and finally, Plaintiff points to the fact that he made an age discrimination complaint to the EEOC and PHRC and his supervisors "never did any investigation into whether anyone claimed Lucero was the future of the company." ECF No. 35-2 at 8. A company has a duty to comply with an EEOC investigation.[3] But Plaintiff does not cite—and the Court cannot locate—any legal authority suggesting that knowledge of an EEOC complaint triggers an independent duty for the company to do its own investigation. Moreover, even if such a duty

---

[3] *See* "Frequently Asked Questions," EEOC, https://www.eeoc.gov/youth/frequently-asked-questions#:~:text=If%20your%20company%20refuses%20to,the%20place%20where%20you%20worked (describing investigation process).

existed, Plaintiff does not explain how or why a failure to investigate would support an inference of discrimination.  *See* ECF No. 35-2 at 8.

In sum, Plaintiff failed to present any record evidence to support an inference that age was the but-for cause of Plaintiff's termination sufficient to create a triable issue on this element of his ADEA claim.  The Court will grant Defendant's motion for summary judgment on this claim.  *See Celotex*, 477 U.S. at 322-23 ("the plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case").

### D.    Workers' Compensation Claim

***Elements of Claim.***  Pennsylvania law prohibits an employer from terminating an at-will employee in retaliation for filing a worker's compensation claim.  *Shick v. Shirley*, 552 Pa. 590, 602-03 (1998).  To state a claim for wrongful discharge based on pursuing workers' compensation benefits, a plaintiff must show "(1) that he engaged in protected activity; (2) that he suffered an adverse employment action either after or contemporaneous with the protected activity; and (3) that there is a causal connection between his protected activity and the employer's adverse action."  *Ellis v. Save Philly Vine St., LLC*, 22cv5245, 2024 WL 493422, at *4 (E.D. Pa. Feb. 7, 2024) (citing *Dunsmuir v. May Dep't Stores Co.*, 120 F. App'x 927, 929 (3d Cir. 2005)).  Only the first and third elements are in dispute here.

***Protected Activity.***  "Filing a workers' compensation claim is a protected activity[.]"  *Id.*  But a plaintiff need not actually file a claim.  It is sufficient to (1) report an injury to the employer and (2) express an intent to the employer to file a workers' compensation claim.  *Id.* (citing *Larochelle*, 769 F. App'x at 63).  Plaintiff did not file a workers' compensation claim.

23

But there is sufficient evidence in the record for a reasonable jury to conclude that Plaintiff both reported his injuries to Defendant and expressed an intent to file a workers' compensation claim.

Plaintiff testified that immediately after he sustained his arm injury, he reported it to "everyone" in the office.  ECF No. 35-5 at 15:2-15.  One of Plaintiff's supervisors also testified that he talked to Plaintiff "every day, Monday through Friday," so he was aware that he suffered a workplace injury.  ECF No. 35-8 at 25:23-26:4.  A reasonable jury could conclude that this constituted "reporting" Plaintiff's injury to his employer.[4]

There is also sufficient evidence that Plaintiff expressed an intent to file a worker's compensation claim.  Defendant argues that Plaintiff never discussed an intent to pursue a claim with either of his direct supervisors.  But there is a text message in the record in which Plaintiff asked one of his direct supervisors (Jonathan Fry) about the status of his medical insurance claims and whether it is "too late for a Workmen's Comp. claim[.]"  ECF No. 35-13 at 2.  Plaintiff also testified that he asked Defendant's management for information about how to file a workers' compensation claim, but was encouraged not to because Defendant would pay his medical bills.  ECF No. 35-5 at 35:9-17.  A reasonable jury could conclude that these communications amounted to Plaintiff expressing an "intent" to pursue a claim.  *See Larochelle*, 769 Fed. App'x at 63.

---

[4] At oral argument, Defendant argued that a plaintiff must show he took an "affirmative action" towards filing a claim to satisfy this element, citing *Landmesser v. United Air Lines, Inc.*, 102 F. Supp. 2d 273 (E.D. Pa. 2000) for this proposition.  *See* ECF No. 46 at 29:15-30:1.  *Landmesser* simply does not say that.  It cites another Eastern District case that states that a plaintiff must present "affirmative evidence" of retaliation to defeat a summary judgment motion.  *See Landmesser*, 102 F. Supp. 2d at 277.  But that citation refers to the causal connection analysis— not the issue of whether an employee engaged in protected activity.  Defendant does not cite— and the Court cannot locate—any legal authority for any "affirmative step" requirement.

*Causal Connection.*  "A plaintiff may present a triable issue of causation by relying on temporal proximity or other circumstantial evidence concerning the employer's motivation." *Kieffer v. CPR Restoration & Cleaning Servs., LLC*, 200 F. Supp. 3d 520, 540 (E.D. Pa. 2016) (citing *Theriault v. Dollar General*, 336 F. App'x 172, 174-75 (3d Cir. 2009)).  One type of circumstantial evidence that could support animus is evidence that "the company opposed or otherwise impeded [the plaintiff's] pursuit of benefits."  *Id.*

Here, Plaintiff was terminated several months after he inquired about filing a workers' compensation claim, *see supra* at 8, so temporal proximity is not likely to support a causal connection.  *See Theriault*, 336 F. App'x at 175 (plaintiff failed to establish causation for workers' compensation retaliation claim "because she was terminated several months after her alleged protected activity" and did not present any other circumstantial evidence related to the employer's motivation); *see also LeBoon v. Lancaster Jewish Comm. Center Ass'n*, 503 F.3d 217, 233 (3d Cir. 2007) ("Although there is no bright line rule . . . a gap of three months between the protected activity and the adverse action, without more, cannot create an inference of causation and defeat summary judgment").  But, as detailed above, Plaintiff has presented evidence that his supervisors "opposed or otherwise impeded" his pursuit of benefits by, among other things, discouraging him from filing a claim by telling him that Defendant would pay his medical bills.  *See Kieffer*, 200 F. Supp. 3d at 540.

A reasonable jury could find a causal connection between Plaintiff's termination and request for information about workers' compensation benefits based on these facts.  Accordingly, the Court will deny Defendant's motion for summary judgment on this claim.

**IV.    CONCLUSION**

Plaintiff has failed to produce any evidence that a reasonable jury could use to find that age discrimination was the but-for cause of his termination.  The Court will therefore grant summary judgment for Defendant on Plaintiff's ADEA claim.  Plaintiff has proffered sufficient record evidence on which a jury could reasonably find for him on each of the essential elements of his ADA and PHRA discrimination, retaliation, and failure to accommodate claims, and on his state-law workers' compensation claim.  Accordingly, the Court will deny summary judgment for Defendant on each of those claims.  An appropriate Order will follow.

**BY THE COURT:**

MARY KAY COSTELLO
United States District Judge